*In re* D.D.H., an Alleged Delinquent Minor (The People of the State of Illinois, Petitioner-Appellant, v. D.D.H., Respondent-Appellee).

Fifth District No. 5—90—0380

Opinion filed November 5, 1991.

Gary Duncan, State's Attorney, of Mt. Vernon (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

This appeal was taken by the State, pursuant to Supreme Court Rule 604(a)(1) (134 Ill. 2d R. 604(a)(1)), from an order of the circuit court of Jefferson County granting a motion to suppress evidence filed by respondent, the minor D.D.H., in delinquency proceedings. We affirm.

The sole witness to testify at the May 15, 1990, hearing on the motion to suppress was Officer Rodney Stuart King, Mt. Vernon police department. Officer King testified that shortly after midnight on January 1, 1990, he was seated in his squad car parked across the street from the Huck's convenience store in the 1900 block of Broadway in Mt. Vernon, Illinois. King observed respondent inside the store. Respondent looked out the windows of the store, saw Officer King and waved at him. King characterized respondent as "actually making fun of me."

Officer King could see the cashier waiting on customers in the front of the store, and periodically entering a back room, where he would remain for a moment before returning. Respondent talked with the cashier in the front of the store, but while the cashier was in the back room, respondent walked up and down the aisles. King "did not observe [respondent] put anything in his coat pockets or any other thing." At one point, respondent stepped outside the store, observed Officer King, waved at him and then reentered the store.

Officer King knew that there were frequent retail thefts at this convenience store and stated that he thought respondent's actions "looked suspicious, *** especially, you know, him noticing me." King did not see respondent pick up any items and pay for them before leaving the store. Upon exiting, respondent was carrying a bag of the type one would obtain from the store clerk, as well as two Huck's Big Swig beverage cups. The cashier made no attempt to stop respondent or to contact Officer King.

As respondent began walking down the 100 block of South Twentieth Street, Officer King stopped him and asked for identification. Respondent produced an identification card issued by Mt. Vernon

Township High School and, in response to King's question, stated that he was 15 years old. As respondent removed his identification from his coat pocket, Officer King saw a package of M&M's and asked respondent if he had purchased them. Respondent replied, "Yes. We can go back and ask the cashier."

Officer King next shined his flashlight through the lids of the cups that respondent carried, and saw that one contained a soft drink, but the other contained something blue. Officer King asked respondent if he could see the cup and when respondent handed it to him, King removed the lid and discovered 10 packs of bubble gum inside. When asked if he had purchased the gum, respondent replied that he had and offered to return to Huck's to verify the fact.

Officer King placed respondent in his squad car, returned to the convenience store and asked the cashier if respondent had purchased the bubble gum. The cashier told Officer King that respondent had purchased chicken livers and gizzards, one package of M&M's, and one package of bubble gum, but that he had not bought 10 packs of bubble gum. At that time, Officer King arrested respondent for retail theft of the bubble gum and searched him, finding eight rolls of Certs candy and two additional packs of M&M's. The cashier stated that respondent had not purchased these items, and by means of the price tags marked "Huck's," the cashier was able to identify them as store merchandise.

Officer King testified that as he observed respondent in the store he was thinking, "[t]his guy's going to be stealing some stuff probably," and stated that he stopped respondent "for his suspicious acts inside the store, just to make sure he did not steal anything inside the store." King testified that he searched respondent to find any additional stolen property and, secondarily, to insure respondent had no weapons. In response to the court's question, Officer King admitted that when he observed respondent walking up and down the aisles of the store, he did not know if respondent was obtaining items he later purchased or was taking items that he did not purchase.

Following argument by counsel, the circuit court took the motion under advisement. On May 23, 1990, the court entered an order granting respondent's motion to suppress evidence. The court concluded, *inter alia*, that "[t]he officer stopped the minor for temporary questioning without arrest pursuant to Chapter 38, section 107—14," and that the officer did not have the required "articulable suspicions" to justify an investigative stop under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

The reviewing court has the duty to affirm the result reached by the circuit court on a motion to suppress evidence unless the lower court's ruling was manifestly erroneous. (*People v. Grice* (1980), 87 Ill. App. 3d 718, 722, 410 N.E.2d 209, 214, *cert. denied* (1981), 450 U.S. 1003, 68 L. Ed. 2d 207, 101 S. Ct. 1714; *In re F.R.* (1991), 209 Ill. App. 3d 274, 277, 568 N.E.2d 133, 135.) It is well settled that a police officer, in appropriate circumstances and in an appropriate manner, may approach an individual for purposes of investigating possible criminal behavior even though there is no probable cause to arrest, provided that the officer's decision to stop is based on specific and articulable facts which, when combined with rational inferences from those facts, reasonably warrant the investigative intrusion. (*Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1879-80; *Grice*, 87 Ill. App. 3d at 722, 410 N.E.2d at 214.) The Court in *Terry* stated that in determining whether a stop is reasonable an objective standard is to be used, namely, whether the facts available to the officer warrant a man of reasonable caution to believe that the action taken was appropriate. (*Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880; accord *People v. Holdman* (1978), 73 Ill. 2d 213, 221, 383 N.E.2d 155, 158, *cert. denied* (1979), 440 U.S. 938, 59 L. Ed. 2d 496, 99 S. Ct. 1285.) However, a mere suspicion or hunch is not sufficient. *Grice*, 87 Ill. App. 3d at 723, 410 N.E.2d at 214.

■ The holding in *Terry* has been codified in section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 107—14). That section provides that a law enforcement officer may detain and temporarily question a person in a public place "when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense." Ill. Rev. Stat. 1989, ch. 38, par. 107—14.

■ A portion of the argument in the briefs filed in this court has been devoted to the question whether Officer King's use of a flashlight to look inside respondent's beverage cup and King's subsequent opening of the cup constituted a search. However, it will not be necessary to address this issue since we find that the statutory standard of section 107—14 was not satisfied at the time defendant was stopped by Officer King. Consequently, the bubble gum in the beverage cup was discovered incident to an illegal stop.

In the present case, Officer King testified that his suspicions were based exclusively on respondent's walking up and down the aisles of the store and waving at him, and that he had not seen respondent take anything from the shelves and "did not observe him put anything in his coat pockets or any other thing." Therefore, by the offi-

cer's own admission, defendant was neither committing a crime nor was he about to commit one at the time of the stop. (See *People v. Jones* (1989), 181 Ill. App. 3d 576, 579, 537 N.E.2d 395, 396-97.) Further, when respondent exited the store he was carrying a bag provided by the cashier, who made no attempt to stop respondent or to contact Officer King. Therefore, the circuit court was not manifestly erroneous in concluding that Officer King did not have the articulable facts required by *Terry* to justify an investigative stop.

We have examined the cases cited by the State in support of its arguments. However, each case dealing with police interference with an individual's fourth amendment rights necessarily turns on its own unique circumstances (*People v. Zamora* (1990), 203 Ill. App. 3d 102, 108, 560 N.E.2d 1053, 1057), and the decisions cited by the State do not contain factual situations comparable to the one here involved.

Accordingly, the judgment of the circuit court of Jefferson County suppressing evidence is affirmed.

Affirmed.

WELCH and HOWERTON, JJ., concur.